(Slip Opinion)          OCTOBER TERM, 2008          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OREGON *v.* ICE

### CERTIORARI TO THE SUPREME COURT OF OREGON

No. 07–901.   Argued October 14, 2008—Decided January 14, 2009

Respondent Ice twice entered an 11-year-old girl's residence and sexually assaulted her.  For each of the incidents, an Oregon jury found Ice guilty of first-degree burglary for entering with the intent to commit sexual abuse; first-degree sexual assault for touching the victim's vagina; and first-degree sexual assault for touching her breasts.  Ice was sentenced under a state statute providing, generally, for concurrent sentences, Ore. Rev. Stat. §137.123(1), but allowing the judge to impose consecutive sentences in these circumstances: (1) when "a defendant is simultaneously sentenced for . . . offenses that do not arise from the same . . . course of conduct," §137.123(2), and (2) when offenses arise from the same course of conduct, if the judge finds either "(a) [t]hat the . . . offense . . . was an indication of defendant's willingness to commit more than one criminal offense; or . . . "(b) [t]he . . . offense . . . caused or created a risk of causing greater or qualitatively different . . . harm to the victim," §137.123(5).  The trial judge first found that the two burglaries constituted separate incidents and exercised his discretion to impose consecutive sentences for those crimes under §137.123(2).  The court then found that each offense of touching the victim's vagina met §137.123(5)'s two criteria, giving the judge discretion to impose the sentences for those offenses consecutive to the two associated burglary sentences.  The court elected to do so, but ordered that the sentences for touching the victim's breasts run concurrently with the other sentences.  On appeal, Ice argued, *inter alia,* that the sentencing statute was unconstitutional under *Apprendi* v. *New Jersey*, 530 U. S. 466, 490, and *Blakely* v. *Washington*, 542 U. S. 296, holding that the Sixth Amendment's jury-trial guarantee requires that the jury, rather than the judge, determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular crime.  The appel-

late court affirmed, but the Oregon Supreme Court reversed, holding
that the *Apprendi* rule applied because the imposition of consecutive
sentences increased Ice's quantum of punishment.

*Held:* In light of historical practice and the States' authority over ad-
ministration of their criminal justice systems, the Sixth Amendment
does not inhibit States from assigning to judges, rather than to juries,
the finding of facts necessary to the imposition of consecutive, rather
than concurrent, sentences for multiple offenses. Pp. 5–11.

(a) The Court declines to extend the *Apprendi* and *Blakely* line of
decisions beyond the offense-specific context that supplied the his-
toric grounding for the decisions. The Court's application of *Ap-
prendi*'s rule must honor the "longstanding common-law practice" in
which the rule is rooted. *Cunningham* v. *California*, 549 U. S. 270,
281. The rule's animating principle is the preservation of the jury's
historic role as a bulwark between the State and the accused at the
trial for an alleged offense. See *Apprendi*, 530 U. S., at 477. Because
the Sixth Amendment does not countenance legislative encroachment
on the jury's traditional domain, see *id.,* at 497, the Court considers
whether the finding of a particular fact was understood as within the
jury's domain by the Bill of Rights' framers, *Harris* v. *United States*,
536 U. S. 545, 557. In so doing, the Court is also cognizant that ad-
ministration of a discrete criminal justice system is among the basic
sovereign prerogatives States retain. See, *e.g., Patterson* v. *New
York,* 432 U. S. 197, 201. These twin considerations—historical prac-
tice and respect for state sovereignty—counsel against extending *Ap-
prendi* to the imposition of sentences for discrete crimes. P. 6.

(b) The historical record demonstrates that both in England before
this Nation's founding and in the early American States, the common
law generally entrusted the decision whether sentences for discrete
offenses should be served consecutively or concurrently to judges' un-
fettered discretion, assigning no role in the determination to the jury.
Thus, legislative reforms regarding the imposition of multiple sen-
tences do not implicate the core concerns that prompted the Court's
decision in *Apprendi*. There is no encroachment here by the judge
upon facts historically found by the jury, nor any threat to the jury's
domain as a bulwark at trial between the State and the accused. In-
stead, the defendant—who historically may have faced consecutive
sentences by default—has been granted by some modern legislatures
statutory protections meant to temper the harshness of the historical
practice. Ice's argument that he is "entitled" to concurrent sentences
absent the factfindings Oregon law requires is rejected. Because the
scope of the federal constitutional jury right must be informed by the
jury's historical common-law role, that right does not attach to every
contemporary state-law "entitlement" to predicate findings. For simi-

Syllabus

lar reasons, *Cunningham*, upon which Ice heavily relies, does not control here.  In holding that the facts permitting imposition of an elevated "upper term" sentence for a particular crime fell within the jury's province rather than the sentencing judge's, 549 U. S., at 274, *Cunningham* had no occasion to consider the appropriate inquiry when no erosion of the jury's traditional role was at stake.  Pp. 7–8.

    (c) States' interest in the development of their penal systems, and their historic dominion in this area, also counsel against the extension of *Apprendi* that Ice requests.  This Court should not diminish the States' sovereign authority over the administration of their criminal justice systems absent impelling reason to do so.  Limiting judicial discretion to impose consecutive sentences serves the "salutary objectives" of promoting sentences proportionate to  "the gravity of the offense," *Blakely,* 542 U. S*.,* at 308, and of reducing disparities in sentence length.  All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal.  To hem in States by holding that they may not choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense.  Neither *Apprendi* nor the Court's Sixth Amendment traditions compel straitjacketing the States in that manner.  Further, the potential intrusion of *Apprendi*'s rule into other state initiatives on sentencing choices or accoutrements—for example, permitting trial judges to find facts about the offense's nature or the defendant's character in determining the length of supervised release, required attendance at drug rehabilitation programs or terms of community service, and the imposition of fines and restitution—would cut the rule loose from its moorings.  Moreover, the expansion Ice seeks would be difficult for States to administer, as the predicate facts for consecutive sentences could substantially prejudice the defense at the trial's guilt phase, potentially necessitating bifurcated or trifurcated trials.  Pp. 9–10.

343 Ore. 248, 170 P. 3d 1049, reversed and remanded.

    GINSBURG, J., delivered the opinion of the Court, in which STEVENS, KENNEDY, BREYER, and ALITO, JJ., joined.  SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., and SOUTER and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–901

OREGON, PETITIONER *v.* THOMAS EUGENE ICE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF OREGON

[January 14, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the scope of the Sixth Amendment's jury-trial guarantee, as construed in *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), and *Blakely* v. *Washington*, 542 U. S. 296 (2004). Those decisions are rooted in the historic jury function—determining whether the prosecution has proved each element of an offense beyond a reasonable doubt. They hold that it is within the jury's province to determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular offense. Thus far, the Court has not extended the *Apprendi* and *Blakely* line of decisions beyond the offense-specific context that supplied the historic grounding for the decisions. The question here presented concerns a sentencing function in which the jury traditionally played no part: When a defendant has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions, does the Sixth Amendment mandate jury determination of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences?

Most States continue the common-law tradition: They

entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently. In some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor. Other States, including Oregon, constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences. It is undisputed that States may proceed on the first two tracks without transgressing the Sixth Amendment. The sole issue in dispute, then, is whether the Sixth Amendment, as construed in *Apprendi* and *Blakely*, precludes the mode of proceeding chosen by Oregon and several of her sister States. We hold, in light of historical practice and the authority of States over administration of their criminal justice systems, that the Sixth Amendment does not exclude Oregon's choice.

## I

### A

State laws, as just observed, prescribe a variety of approaches to the decision whether a defendant's sentences for distinct offenses shall run concurrently or consecutively. Oregon might have followed the prevailing pattern by placing the decision within the trial court's discretion in all,[1] or almost all,[2] circumstances. Instead, Oregon and several other States have adopted a more restrained approach: they provide for judicial discretion, but constrain its exercise. In these States, to impose consecutive sen-

------

[1] *E.g.*, Connecticut (Conn. Gen. Stat. §53a–37 (2005)); Idaho (Idaho Code §18–308 (Lexis 2004)); Nebraska (Neb. Rev. Stat. §29–2204 (1995)). See generally Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 9, n. 6 (listing laws of nine other States).

[2] *E.g.,* Florida (Fla. Stat. §921.16 (2007)); Kansas (Kan. Stat. Ann. §21–4608 (2007)); Mississippi (Miss. Code Ann. §99–19–21 (2007)).

tences, judges must make certain predicate fact findings.[3]

The controlling statute in Oregon provides that sentences shall run concurrently unless the judge finds statutorily described facts. Ore. Rev. Stat. §137.123(1) (2007). In most cases, finding such facts permits—but does not require—the judge to order consecutive sentences.[4]  Specifically, an Oregon judge may order consecutive sentences "[i]f a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct." §137.123(2).  If the offenses *do* arise from the same course of conduct, the judge may still impose consecutive sentences if she finds either:

> "(a)  That the criminal offense . . . was an indication of defendant's willingness to commit more than one criminal offense; or
> "(b)  The criminal offense . . . caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or . . . to a different victim . . . ." §137.123(5).

### B

On two occasions between December 1996 and July 1997, respondent Thomas Eugene Ice entered an apartment in the complex he managed and sexually assaulted an 11-year-old girl.  343 Ore. 248, 250, 170 P. 3d 1049, 1050 (2007).  An Oregon jury convicted Ice of six crimes. For each of the two incidents, the jury found him guilty of first-degree burglary for entering with the intent to com-

---

[3] *E.g.,* Maine (Me. Rev. Stat. Ann., Tit. 17–A, §1256 (2006); *State* v. *Keene*, 2007 ME 84, 927 A. 2d 398); Tennessee (Tenn. Code Ann. §40–35–115(b) (2006); *State* v. *Allen*, 259 S. W. 3d 671 (Tenn. 2008)); Oregon (Ore. Rev. Stat. §137.123 (2007)).

[4] Sentences must run consecutively, however, "[w]hen a defendant is sentenced for a crime committed while the defendant was incarcerated." Ore. Rev. Stat. §137.123(3).

mit sexual abuse; first-degree sexual assault for touching the victim's vagina; and first-degree sexual assault for touching the victim's breasts. *Ibid.*

At sentencing, the judge made findings, pursuant to §137.123, that permitted the imposition of consecutive sentences. First, the judge found that the two burglaries constituted "separate incident[s]." *Id.*, at 255, 170 P. 3d, at 1053 (internal quotation marks omitted). Based on that finding, the judge had, and exercised, discretion to impose the two burglary sentences consecutively. *Ibid.;* see §137.123(2).

Second, the court found that each offense of touching the victim's vagina met the statutory criteria set forth in §137.123(5): Ice displayed a "willingness to commit more than one . . . offense" during each criminal episode, and his conduct "caused or created a risk of causing greater, qualitatively different loss, injury, or harm to the victim." *Id.*, at 253, 170 P. 3d, at 1051 (internal quotation marks omitted). These findings gave the judge discretion to impose the sentence for each of those sexual assault offenses consecutive to the associated burglary sentence. The court elected to do so. *Ibid.* The court ordered, however, that the sentences for touching the victim's breasts run concurrently with the other sentences. *Ibid.* In total, the court sentenced Ice to 340 months' imprisonment. App. 46–87.[5]

Ice appealed his sentences. In relevant part, he argued that he had a Sixth Amendment right to have the jury, not the sentencing judge, find the facts that permitted the imposition of consecutive sentences. The appellate court affirmed the trial court's judgment without opinion. 178 Ore. App. 415, 39 P. 3d 291 (2001).

The Oregon Supreme Court granted Ice's petition for

---

[5] Had the judge ordered concurrent service of all sentences, Ice's time in prison would have been 90 months. App. 68, 75.

review and reversed, 4 to 2. 343 Ore., at 250, 170 P. 3d, at 1050.[6] In the majority's view, the rule of *Apprendi* applied, because the imposition of consecutive sentences increased "the quantum of punishment" imposed. 343 Ore., at 265, 170 P. 3d, at 1058. The dissenting justices concluded that "[n]either the holding in *Apprendi* nor its reasoning support[ed] extending that decision to the question of consecutive sentencing." *Id.*, at 267, 170 P. 3d, at 1059 (opinion of Kistler, J.). State high courts have divided over whether the rule of *Apprendi* governs consecutive sentencing decisions.[7] We granted review to resolve the question. 552 U. S. \_\_ (2008).

## II

The Federal Constitution's jury-trial guarantee assigns the determination of certain facts to the jury's exclusive province. Under that guarantee, this Court held in *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U. S., at 490.

We have applied *Apprendi*'s rule to facts subjecting a defendant to the death penalty, *Ring* v. *Arizona*, 536 U. S. 584, 602, 609 (2002), facts allowing a sentence exceeding the "standard" range in Washington's sentencing system, *Blakely*, 542 U. S., at 304–305, and facts prompting an elevated sentence under then-mandatory Federal Sentencing Guidelines, *United States* v. *Booker*, 543 U. S. 220, 244

---

[6] Preliminarily, the Oregon Supreme Court ruled unanimously that the consecutive-sentencing findings did not constitute elements of any specific crime, and therefore the jury-trial right safeguarded by the Oregon Constitution was not violated. 343 Ore. 248, 261–262, 170 P. 3d 1049, 1056 (2007).

[7] Compare*, e.g., People* v. *Wagener*, 196 Ill. 2d 269, 283–286, 752 N. E. 2d 430, 440–442 (2001) (holding that *Apprendi* does not apply); *Keene*, 927 A. 2d, 405–408 (same); with *State* v. *Foster*, 109 Ohio St. 3d 1, 2006–Ohio–856, 845 N. E. 2d 470 (holding *Apprendi* applicable).

(2005).  Most recently, in *Cunningham* v. *California*, 549
U. S. 270 (2007), we applied *Apprendi*'s rule to facts per-
mitting imposition of an "upper term" sentence under
California's determinate sentencing law.  All of these
decisions involved sentencing for a discrete crime, not—as
here—for multiple offenses different in character or com-
mitted at different times.

Our application of *Apprendi*'s rule must honor the "long-
standing common-law practice" in which the rule is rooted.
*Cunningham*, 549 U. S.*,* at 281.  The rule's animating
principle is the preservation of the jury's historic role as a
bulwark between the State and the accused at the trial for
an alleged offense.  See *Apprendi*, 530 U. S., at 477.
Guided by that principle, our opinions make clear that the
Sixth Amendment does not countenance legislative en-
croachment on the jury's traditional domain.  See *id.,* at
497.  We accordingly considered whether the finding of a
particular fact was understood as within "the domain of
the jury . . . by those who framed the Bill of Rights."
*Harris* v. *United States*, 536 U. S. 545, 557 (2002) (plural-
ity opinion).  In undertaking this inquiry, we remain
cognizant that administration of a discrete criminal justice
system is among the basic sovereign prerogatives States
retain.  See, *e.g., Patterson* v. *New York,* 432 U. S. 197, 201
(1977).

These twin considerations—historical practice and
respect for state sovereignty—counsel against extending
*Apprendi*'s rule to the imposition of sentences for discrete
crimes.  The decision to impose sentences consecutively is
not within the jury function that "extends down centuries
into the common law."  *Apprendi*, 530 U. S., at 477.  In-
stead, specification of the regime for administering multi-
ple sentences has long been considered the prerogative of
state legislatures.

### A

The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge. See, *e.g.*, 1 J. Bishop, Criminal Law §636, pp. 649–650 (2d ed. 1858) ("[W]hen there are two or more convictions, on which sentence remains to be pronounced; the judgment may direct, that each succeeding period of imprisonment shall commence on the termination of the period next preceding."); A. Campbell, Law of Sentencing §9:22, p. 425 (3d ed. 2004) ("Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges."). This was so in England before the founding of our Nation,[8] and in the early American States.[9] Ice "has no quarrel with [this account] of consecutive sentencing practices through the ages." Brief for Respondent 32. The historical record further indicates that a judge's imposition of consecutive, rather than concurrent, sentences was the prevailing practice.[10]

-----------

[8] *E.g., King* v. *Wilkes*, 19 How. St. Tr. 1075, 1132–1136 (K. B. 1769); see also *Lee* v. *Walker*, [1985] 1 Q. B. 1191, 1201 (1984) ("[T]he High Court has always had inherent jurisdiction to impose consecutive sentences of imprisonment in any appropriate case where the court had power to imprison.").

[9] *E.g., Russell* v. *Commonwealth*, 7 Serg. & Rawle 489, 490 (Pa. 1822) (Judicial imposition of consecutive sentences has been "the common practice in the Courts of this State," and it is "warranted by principle, practice, and authority."); *In re Walsh*, 37 Neb. 454, 456, 55 N. W. 1075, 1076 (1893) ("[T]he great weight of authority is in favor of the proposition that . . . the court has power to impose cumulative sentences."); *In re Breton*, 93 Me. 39, 42, 44 A. 125, 126 (1899) (same); *Howard* v. *United States*, 75 F. 986, 993 (CA6 1896) ("[A] rule which denies the court the power to impose cumulative sentences turns the trial and conviction on all the indictments except one into an idle ceremony.").

[10] *E.g., Queen* v. *Cutbush*, 2 L. R. Q. B. 379, 382, 10 Cox Crim. Cas. 489, 492 (1867) ("[R]ight and justice require [that] when a man has been guilty of separate offences, . . . that he should not escape from the

In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi.* There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused. Instead, the defendant—who historically may have faced consecutive sentences by default—has been granted by some modern legislatures statutory protections meant to temper the harshness of the historical practice.

It is no answer that, as Ice argues, "he was '*entitled*' to" concurrent sentences absent the fact findings Oregon law requires. Brief for Respondent 43. In Ice's view, because "the Oregon Legislature deviated from tradition" and enacted a statute that hinges consecutive sentences on fact findings, *Apprendi*'s rule must be imported. Brief for Respondent 33. As we have described, the scope of the constitutional jury right must be informed by the historical role of the jury at common law. See, *e.g., Williams* v. *Florida,* 399 U. S. 78, 98–100 (1970). It is therefore not the case that, as Ice suggests, the federal constitutional right attaches to every contemporary state-law "entitlement" to predicate findings.

For similar reasons, *Cunningham*, upon which Ice heavily relies, does not control his case. As stated earlier, we held in *Cunningham* that the facts permitting imposition of an elevated "upper term" sentence for a particular crime fell within the jury's province. 549 U. S., at 274 (internal quotation marks omitted). The assignment of such a finding to the sentencing judge implicates *Apprendi*'s core concern: a legislative attempt to "remove from the [prov-

_____

punishment due to the additional offence, merely because he is already sentenced to be imprisoned for another offence."); *ibid.* (noting that it had been the practice to impose consecutive sentences "so far as living judicial memory goes back").

ince of the] jury" the determination of facts that warrant punishment for a specific statutory offense. *Apprendi*, 530 U. S., at 490 (internal quotation marks omitted). We had no occasion to consider the appropriate inquiry when no erosion of the jury's traditional role was at stake. *Cunningham* thus does not impede our conclusion that, as *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts.

B

States' interest in the development of their penal systems, and their historic dominion in this area, also counsel against the extension of *Apprendi* that Ice requests. Beyond question, the authority of States over the administration of their criminal justice systems lies at the core of their sovereign status. See, *e.g., Patterson,* 432 U. S., at 201 ("It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government."). We have long recognized the role of the States as laboratories for devising solutions to difficult legal problems. See *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 311 (1932) (Brandeis, J., dissenting). This Court should not diminish that role absent impelling reason to do so.

It bears emphasis that state legislative innovations like Oregon's seek to rein in the discretion judges possessed at common law to impose consecutive sentences at will. Limiting judicial discretion to impose consecutive sentences serves the "salutary objectives" of promoting sentences proportionate to "the gravity of the offense," *Blakely,* 542 U. S., at 308, and of reducing disparities in sentence length, see 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §26.3(f) (3d ed 2007). All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth

Amendment shoal. To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither *Apprendi* nor our Sixth Amendment traditions compel straitjacketing the States in that manner.

Further, it is unclear how many other state initiatives would fall under Ice's proposed expansion of *Apprendi*. As 17 States have observed in an *amici* brief supporting Oregon, States currently permit judges to make a variety of sentencing determinations other than the length of incarceration. Trial judges often find facts about the nature of the offense or the character of the defendant in determining, for example, the length of supervised release following service of a prison sentence; required attendance at drug rehabilitation programs or terms of community service; and the imposition of statutorily prescribed fines and orders of restitution. See Brief for State of Indiana et al. as *Amici Curiae* 11. Intruding *Apprendi*'s rule into these decisions on sentencing choices or accoutrements surely would cut the rule loose from its moorings.

Moreover, the expansion that Ice seeks would be difficult for States to administer. The predicate facts for consecutive sentences could substantially prejudice the defense at the guilt phase of a trial. As a result, bifurcated or trifurcated trials might often prove necessary. Brief for State of Indiana et al. as *Amici Curiae* 14–15. We will not so burden the Nation's trial courts absent any genuine affront to *Apprendi*'s instruction.

We recognize that not every state initiative will be in harmony with Sixth Amendment ideals. But as we have previously emphasized, "structural democratic constraints exist to discourage legislatures from" pernicious manipulation of the rules we articulate. *Apprendi*, 530 U. S., at 490, n. 16. In any event, if confronted with such a manipulation, "we would be required to question whether the

[legislative measure] was constitutional under this Court's prior decisions." *Id.*, at 491, n. 16. The Oregon statute before us today raises no such concern.

## III

Members of this Court have warned against "wooden, unyielding insistence on expanding the *Apprendi* doctrine far beyond its necessary boundaries." *Cunningham*, 549 U. S., at 295 (Kennedy, J., dissenting). The jury-trial right is best honored through a "principled rationale" that applies the rule of the *Apprendi* cases "within the central sphere of their concern." 549 U. S., at 295. Our disposition today—upholding an Oregon statute that assigns to judges a decision that has not traditionally belonged to the jury—is faithful to that aim.

\*    \*    \*

For the reasons stated, the judgment of the Oregon Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 07–901

OREGON, PETITIONER *v.* THOMAS EUGENE ICE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
OREGON

[January 14, 2009]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE SOUTER, and JUSTICE THOMAS join, dissenting.

The rule of *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), is clear: Any fact—other than that of a prior conviction—that increases the maximum punishment to which a defendant may be sentenced must be admitted by the defendant or proved beyond a reasonable doubt to a jury. Oregon's sentencing scheme allows judges rather than juries to find the facts necessary to commit defendants to longer prison sentences, and thus directly contradicts what we held eight years ago and have reaffirmed several times since. The Court's justification of Oregon's scheme is a virtual copy of the dissents in those cases.

The judge in this case could not have imposed a sentence of consecutive prison terms without making the factual finding that the defendant caused "separate harms" to the victim by the acts that produced two convictions. See 343 Ore. 248, 268, 170 P. 3d 1049, 1060 (2007) (Kistler, J., dissenting). There can thus be no doubt that the judge's factual finding was "essential to" the punishment he imposed. *United States* v. *Booker*, 543 U. S. 220, 232 (2005). That "should be the end of the matter." *Blakely* v. *Washington*, 542 U. S. 296, 313 (2004).

Instead, the Court attempts to distinguish Oregon's sentencing scheme by reasoning that the rule of *Apprendi* applies only to the length of a sentence for an individual

crime and not to the total sentence for a defendant.  I cannot understand why we would make such a strange exception to the treasured right of trial by jury.  Neither the reasoning of the *Apprendi* line of cases, nor any distinctive history of the factfinding necessary to imposition of consecutive sentences, nor (of course) logic supports such an odd rule.

We have taken pains to reject artificial limitations upon the facts subject to the jury-trial guarantee.  We long ago made clear that the guarantee turns upon the penal consequences attached to the fact, and not to its formal definition as an element of the crime.  *Mullaney* v. *Wilbur*, 421 U. S. 684, 698 (1975).  More recently, we rejected the contention that the "aggravating circumstances" that qualify a defendant for the death penalty did not have to be found by the jury.  "If," we said, "a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring* v. *Arizona*, 536 U. S. 584, 602 (2002).  A bare three years ago, in rejecting the contention that the facts determining application of the Federal Sentencing Guidelines did not have to be found by the jury, we again set forth the pragmatic, practical, nonformalistic rule in terms that cannot be mistaken: The jury must "find the existence of '"any particular fact"' that the law makes essential to [a defendant's] punishment." *Booker*, *supra*, at 232 (quoting *Blakely*, *supra*, at 301).

This rule leaves no room for a formalistic distinction between facts bearing on the number of years of imprisonment that a defendant will serve for one count (subject to the rule of *Apprendi*) and facts bearing on how many years will be served in total (now not subject to *Apprendi*).  There is no doubt that consecutive sentences are a "greater punishment" than concurrent sentences, *Apprendi*, *supra*, at 494.  We have hitherto taken note of the

reality that "a concurrent sentence is traditionally imposed as a less severe sanction than a consecutive sentence." *Ralston* v. *Robinson*, 454 U. S. 201, 216, n. 9 (1981) (emphasis deleted). The decision to impose consecutive sentences alters the single consequence most important to convicted noncapital defendants: their date of release from prison. For many defendants, the difference between consecutive and concurrent sentences is more important than a jury verdict of innocence on any single count: Two consecutive 10-year sentences are in most circumstances a more severe punishment than any number of concurrent 10-year sentences.

To support its distinction-without-a-difference, the Court puts forward the same (the *very* same) arguments regarding the history of sentencing that were rejected by *Apprendi*. Here, it is entirely irrelevant that common-law judges had discretion to impose either consecutive or concurrent sentences, *ante,* at 7; just as there it was entirely irrelevant that common-law judges had discretion to impose greater or lesser sentences (within the prescribed statutory maximum) for individual convictions. There is no Sixth Amendment problem with a system that exposes defendants to a known range of sentences after a guilty verdict: "In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail." *Blakely*, *supra*, at 309. The same analysis applies to a system where both consecutive and concurrent sentences are authorized after only a jury verdict of guilt; the burglar-rapist knows he is risking consecutive sentences. Our concern here is precisely the same as our concern in *Apprendi:* What happens when a State breaks from the common-law practice of discretionary sentences and permits the imposition of an elevated sentence only upon the showing of extraordinary facts? In such a system, the defendant "is *entitled* to" the lighter sentence "and by reason of the Sixth Amendment[,] the

facts bearing upon that entitlement must be found by a jury." *Blakely*, 542 U. S., at 309.

The Court protests that in this case there is no "encroachment" on or "erosion" of the jury's role because traditionally it was for the judge to determine whether there would be concurrent terms. *Ante*, at 8–9. Alas, this argument too was made and rejected in *Apprendi*. The jury's role was not diminished, the *Apprendi* dissent contended, because it was traditionally up to judges, not juries, to determine what the sentence would be. 530 U. S., at 556, 559 (opinion of BREYER, J.). The Court's opinion acknowledged that in the 19th century it was the practice to leave sentencing up to the judges, within limits fixed by law. But, it said, that practice had no bearing upon whether the jury must find the fact where a law conditions the higher sentence upon the fact. The jury's role *is* diminished when the length of a sentence is made to depend upon a fact removed from its determination. *Id.*, at 482–483. The same is true here.

The Court then observes that the results of the Oregon system could readily be achieved, instead, by a system in which consecutive sentences are the default rule but judges are permitted to impose concurrent sentences when they find certain facts. *Ante*, at 9–10. Undoubtedly the Sixth Amendment permits a system in which judges are authorized (or even required) to impose consecutive sentences unless the defendant proves additional facts to the Court's satisfaction. See *ibid*. But the permissibility of that alternative means of achieving the same end obviously does not distinguish *Apprendi*, because the same argument (the *very* same argument) was raised and squarely rejected in that case:

> "If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is

neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme." 530 U. S., at 491, n. 16.

Ultimately, the Court abandons its effort to provide analytic support for its decision, and turns to what it thinks to be the "'salutary objectives'" of Oregon's scheme. *Ante*, at 9. "Limiting judicial discretion," we are told, promotes sentences proportionate to the gravity of the offense, and reduces disparities in sentence length. *Ibid.* The same argument (the *very* same argument) was made and rejected in *Booker*, see 543 U. S., at 244, and *Blakely*, see 542 U. S., at 313. The protection of the Sixth Amendment does not turn on this Court's opinion of whether an alternative scheme is good policy, or whether the legislature had a compassionate heart in adopting it. The right to trial by jury and proof beyond a reasonable doubt is a given, and *all* legislative policymaking—good and bad, heartless and compassionate—must work within the confines of that reality. Of course the Court probably exaggerates the benign effect of Oregon's scheme, as is suggested by the defense bar's vigorous objection, evidenced by the participation of the National Association of Criminal Defense Lawyers as *amicus* in favor of respondent. Even that exaggeration is a replay of the rejected dissent in one of our prior cases. There the Court responded: "It is hard to believe that the National Association of Criminal Defense Lawyers was somehow duped into arguing for the wrong side." *Blakely, supra*, at 312.

Finally, the Court summons up the parade of horribles assembled by the *amicus* brief of 17 States supporting Oregon. It notes that "[t]rial judges often find facts" in

connection with "a variety of sentencing determinations other than the length of incarceration," and worries that even their ability to set the length of supervised release, impose community service, or order entry into a drug rehabilitation program, may be called into question. *Ante*, at 10. But if these courses reduce rather than augment the punishment that the jury verdict imposes, there is no problem. The last horrible the Court invokes is the prospect of bifurcated or even trifurcated trials in order to have the jury find the facts essential to consecutive sentencing without prejudicing the defendant's merits case. *Ibid.* That is another *déjà vu* and *déjà rejeté;* we have watched it parade past before, in several of our *Apprendi*-related opinions, and have not saluted. See *Blakely*, *supra*, at 336–337 (BREYER, J., dissenting); *Apprendi*, *supra*, at 557 (same).

\* \* \*

The Court's peroration says that "[t]he jury-trial right is best honored through a 'principled rationale' that applies the rule of the *Apprendi* cases 'within the central sphere of their concern.'" *Ante*, at 11 (quoting *Cunningham* v. *California*, 549 U. S. 270, 295 (2007) (KENNEDY, J., dissenting)). Undoubtedly so. But we have hitherto considered "the central sphere of their concern" to be facts necessary to the increase of the defendant's sentence beyond what the jury verdict alone justifies. "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Id.*, at 290 (opinion of the Court). If the doubling or tripling of a defendant's jail time through fact-dependent consecutive sentencing does not meet this description, nothing does. And as for a "principled rationale": The Court's reliance upon a distinction without a difference, and its repeated exhumation of arguments dead and bur-

ied by prior cases, seems to me the epitome of the opposite. Today's opinion muddies the waters, and gives cause to doubt whether the Court is willing to stand by *Apprendi*'s interpretation of the Sixth Amendment's jury-trial guarantee.